IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GARY CROSSWHITE,　　　　　　　　　　　　　　　　　Civil No. 04-6311-AA
　　　　　　　　　　　　　　　　　　　　　　　　　　OPINION AND ORDER

　　　　　Plaintiff,

　　vs.

JUMPKING, INC.,

　　　　　Defendant/Third Party
　　　　　Plaintiff,

　　vs.

JACK AND MISTY URBACH,

　　　　　Third-Party Defendants,
_____

Daniel M. Spencer
Daniel M. Spencer LLC
388 Bluff Drive
Bend, Oregon 97702

Scott M. Adam
McCormick Adam & Macdonald, P.A.
9300 W. 110th Street
Overland Park, Kansas 66210
　　　　　Attorneys for plaintiff

William Wheatley
Jaqua & Wheatley, LLC
835 East Park Street
Eugene, Oregon 97401

Brandon J. Baxter
Beards & Park, L.C.
P.O. Box 675
Logan, Utah 84321
    Attorney for defendant/third-party plaintiff

Carl R. Rodrigues
Lehner, Mitchell, Rodrigues & Sears
1500 SW First Avenue, Suite 1015
Portland, Oregon 97204
    Attorney for third-party defendants

AIKEN, Judge:

Defendant/third-party plaintiff Jumpking, Inc. (Jumpking) filed a summary judgment motion. The motion is granted and the case is dismissed.

## BACKGROUND

On May 11, 2002, plaintiff, Gary Crosswhite, was jumping on a trampoline with a another boy. The trampoline was owned by Jack and Misty Urbach, third-party defendants. The 14-foot round-shaped "backyard" trampoline was manufactured by defendant/third-party plaintiff, Jumpking, and purchased by the Urbach's from Costco, Inc. sometime in 1999.

While on the trampoline, plaintiff attempted to execute a back-flip and accidentally landed on his head and neck. The force of the fall caused a fracture in plaintiff's cervical spine resulting in paraplegia. Plaintiff was sixteen years old at the time of his injury. Plaintiff alleges that his injuries were

caused by: (1) the round trampoline design without center markings; and (2) inadequate warnings and instructions. Plaintiff brings this lawsuit against Jumpking alleging the following claims: (1) strict liability; (2) negligence; and (3) breach of implied warranty. Jumpking filed a lawsuit against third-party defendants, the Urbach's, for indemnity and contribution if Jumpking is found liable to the plaintiff.

Plaintiff, represented by counsel, filed this lawsuit on September 1, 2004. Over one year later, on November 10, 2005, defendant filed the summary judgment motion at bar. Plaintiff's response in opposition to defendant's motion was due on November 21, 2005. To date, plaintiff has not filed any opposition to the motion. Therefore, the court will consider the motion unopposed.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a

dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Electrical, 809 F.2d at 630.

## DISCUSSION

Oregon defines a product liability action as "a civil action brought against a manufacturer, distributer, seller or lessor of a product for damages arising out of: (1) any design, inspection, testing, manufacturing or other defect in a product; (2) any failure to warn regarding a product; or (3) any failure to properly instruct in the use of a product.  Or. Rev. Stat. 30.900(1)-(3).  This statute "embraces all theories a plaintiff can claim in an action based on a product defect."  Kambury v. DaimlerChrysler Corp., 185 Or. App. 635, 639, 60 P.3d 1103

(2003). This includes claims based on theories of negligence, strict liability, breach of warranty and fraudulent misrepresentation. Simonsen v. Ford Motor Co., 196 Or. App. 460, 466, 102 P.3d 710 (2004), rev. denied, 338 Or. 681, 115 P.3d 246 (2005).

I. Defective or Unreasonably Dangerous

Plaintiff must present evidence that the trampoline was defectively designed. Oregon law holds that the seller of a product "in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm or damage to property caused by that condition if (a) the seller or lessor is engaged in the business of selling or leasing such a product; and (b) the product is expected to and does reach the user or consumer without substantial changes in the condition in which it is sold or leased." ORS 30.920(1). Oregon has adopted the "consumer expectations test" pursuant to § 402A, comments a - m, as the theory of liability for ORS 30.920. See McCathern v. Toyota Motor Corp., 332 Or. 59, 77-79, 23 P.3d 320 (2001)(Court rejected the "reasonable manufacturer test" in favor of the "consumer expectations test," which is in keeping with the language of ORS 30.920 and § 402A of the Restatement (Second) of Torts). Under the consumer expectations test, the plaintiff must prove that when the product left the defendant's hands, the product was: (1) in a defective condition not contemplated by the

ultimate consumer which made it unreasonably dangerous; and (2) the defective product was dangerous to an extent beyond that which the ordinary consumer would have expected. Id.; ORS 30.920(1)-(3).

The defendant asserts that the trampoline was in a condition contemplated by an ordinary consumer or user and was not unreasonably dangerous when it left defendant's control. Plaintiff must show that at the time the trampoline left defendant's possession, it was in a condition not contemplated by an ordinary consumer which rendered it unreasonably dangerous. Jack Urbach testified that all parts of the trampoline were present when he assembled it in 1999. Defendant's Ex. 3, p. 41. "The burden of proof that the product was in a defective condition at the time it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden will not be sustained." § 402A, Comment g. Plaintiff has not submitted any evidence to meet this burden. There can be no dispute that an ordinary consumer buys and uses a trampoline to jump on it, and a design that allows for such activity is exactly that which is contemplated by an ordinary consumer or user of a trampoline. Jack Urbach testified that he and his wife purchased the trampoline for the "family to have fun." Defendant's Ex. 3, p. 30. Moreover, plaintiff testified

that he jumped on the Urbach's trampoline for "fun," and "never" had any problems with it. Defendant's Ex. 1, p. 77-78.

I find no evidence in the record to dispute defendant's contention that when Urbach purchased the trampoline in 1999, the trampoline box contained all of the parts designed to be included by the manufacturer, and that he assembled the parts in accordance with defendant's specifications. Further, defendant notes that plaintiff has failed to offer a practicable alternative design that defendant could have used that would have eliminated the alleged unsafe characteristics of the trampoline without destroying its utility. See Wilson v. Piper Aircraft Corp., 282 Or. 61, 577 P.2d 1322 (1978)(requiring plaintiff to offer evidence that proposed alternative design is "practicable," and requiring court to "balance the utility of the risk against its magnitude" before sending case to a jury). In Wilson, the Oregon Supreme Court held that, "the trial court should not permit an allegation of design defect to go to the jury unless there is sufficient evidence upon which to make this determination . . . . plaintiffs' prima facie case of a defect must show more than a technical possibility of a safer design." Id. at 67-68(internal quotation omitted).

Plaintiff's complaint against the defendant seems to be that all trampolines are defectively designed and should be banned from the marketplace. Plaintiff's allegation, however, of the

Page 7 - OPINION AND ORDER

trampoline's defective design requires evidence of a safer, practicable design that would reduce the risk associated with its use while not reducing the product's utility. It is not sufficient that plaintiff merely allege that the trampoline is defective without offering evidence that there exists a safer and practicable design that would reduce the risk without eliminating its utility.

The second part of the § 402A consumer expectations test requires plaintiff to produce sufficient evidence showing that the trampoline was "unreasonable dangerous." McCathern, 332 Or. at 77. An unreasonably dangerous product is defined as "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge of the community as to it characteristics[.]" Restatement (Second) of Torts § 402A, comment I (1967).

I am persuaded by a factually similar Washington case where a 16-year-old boy was severely injured while attempting to execute a double-flip on a trampoline. Anderson v. Weslo, Inc., 79 Wash. App. 829, 832, 906 P.2d 336 (1995). Similar to the case at bar, in Anderson, the plaintiff was jumping on a trampoline owned by the parents of plaintiff's friend. The plaintiff filed suit against the defendant manufacturer of the trampoline alleging that the trampoline was defectively designed and possessed inadequate warnings. Id. The trial court applied the

§ 402A "consumer expectation test," and granted defendant's motion for summary judgment. Id. at 833. The court held:

> Under the 'consumer expectations test, [plaintiff] must show that the trampoline was more dangerous than the ordinary consumer would expect. [Plaintiff] has presented no evidence that a question of fact exists on this issue. The ordinary consumer buys a trampoline in order to jump on it. Any time a person jumps on a trampoline, he or she could fall and be injured. The dangers of jumping are therefore obvious enough to be contemplated by the ordinary consumer. For these reasons, no question of material fact exists regarding [plaintiff's] defective design claim.

Id. at 837. See also, Ford v. Nairn, 307 Ill. App. 3d 296, 302, 717 NE2d 525 (1999)(14-year-old girl injured while jumping on defendant's trampoline, court rejected argument that jumping on a trampoline was abnormally dangerous but noted that there are "open and obvious" risks to "teenagers and adults" associated with trampoline use).

Given Oregon's objective standard and the facts that plaintiff was 16-years-old, with a 3.6 grade point average in high school, with over six years experience with trampolines, I find that plaintiff was capable of appreciating the risks associated with jumping and performing flips on a trampoline. The court also notes plaintiff's deposition testimony where he acknowledges a subjective awareness of the general dangers associated with jumping on a trampoline. Specifically, plaintiff testified that he was "aware of the possibility of falling off the trampoline and being hurt," and that there were some

activities, such as "double jumping" (jumping two people at a time on the trampoline) that he would not do because he considered it "dangerous." Defendant's Ex. 1, p. 29-30.

In summary, I find no evidence that the trampoline was in a defective condition when it left defendant's control. Further, plaintiff has not raised an issue of fact by producing evidence that the trampoline was more dangerous than an ordinary consumer would expect. Defendant's summary judgment motion on this issue is granted.

## II. <u>Defendant's Warnings Were Adequate</u>

I find that defendant's warnings were adequate as a matter of law. The Oregon Court of Appeals has stated:

> A product is not in a defective condition when it is
> safe for normal handling . . . . If the injury
> results from abnormal handling. . . the seller
> is not liable. Where, however, [the seller]
> has reason to anticipate that danger may result
> from a particular use, . . .[the seller] may be
> required to give adequate warning of the danger
> (see Comment j), and a product sold without
> such warning is in a defective condition.

<u>Benjamin v. Wal-Mart Stores, Inc.</u>, 185 Or. App. 444, 453, 61 P.3d 257 (2002)(quoting § 402A, comment h), <u>rev. denied</u>, 335 Or. 479, 72 P.3d 76 (2003).

Comment j referred to above, states: "[i]n order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use." § 402A, comment j. However, "[w]here warning is

given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning is not in a defective condition, nor is it unreasonably dangerous." Benjamin, 185 Or. App. at 454 (quoting § 402A, comment j).

Defendant's trampoline is manufactured with nine warning labels that are affixed to various trampoline components. In addition to these nine warning labels, defendant also provides a large laminated warning placard that is designed to be attached by the consumer to the metal frame near the ladder upon which jumpers mount the trampoline. Defendant further provides consumers with a detailed User Manual and a videotape that instructs both users and supervisors about safe and responsible trampoline use. Specifically, the warnings provided to the consumer by Defendant are as follows:

> (1) two adhesive labels on the frame legs warning jumpers against performing somersaults (flips), defendant's Ex. 9;
>
> (2) two adhesive labels on the frame legs warning jumpers against jumping on the trampoline with multiple people, defendant's Ex. 10;
>
> (3) two adhesive labels on the frame legs warning jumpers that misuse and abuse of the trampoline can result in serious injuries and advising jumpers to read instructions before using and to inspect for any defective parts; defendant's Ex. 8;
>
> (4) a large label affixed to the frame pad warning jumpers against doing somersaults (flips) and against jumping on the trampoline with multiple people, defendant's Ex. 11;
>
> (5) a large laminated warning placard to attach to the frame of the trampoline at the entry ladder location

Page 11 - OPINION AND ORDER

entitled TRAMPOLINE SAFETY INSTRUCTIONS - ! WARNING, and warning both users and supervisors against various misuses of the trampoline, including performing somersaults (flips) and jumping on the trampoline with multiple people, defendant's Ex. 6;

(6) two warning labels stitched into the mat (bed) of the trampoline advising that misuse and abuse of the trampoline can result in serious injuries and advising jumpers to read instructions before using and to inspect for any defective parts, defendant's Ex. 7;

(7) the User Manual, outlining instructions to both users and supervisors regarding safe use of the trampoline and providing additional and extensive warnings against performing somersaults (flips) and against jumping with multiple people, defendant's Ex. 5; and

(8) an instructional video provided to instruct users and supervisors how to safely use and assemble the trampoline, including warnings against performing somersaults (flips) and against jumping with multiple people, defendant's Ex. 12.

Uniform trampoline safety standards are published by the American Society for Testing and Materials (ASTM). The ASTM standard sets forth specific warning language to accompany trampolines. See Defendant's Ex. 13 (copy of ASTM Standard Consumer Safety Specifications for Components, Assembly and Use of a Trampoline). The record supports defendant's allegation that the trampoline at issue, including the warning that accompanied it, complied with all ASTM standards relevant at the time. Defendant's Ex. 4, p. 57, 85-86; Ex. 13. Moreover, the ASTM standards at that time did not require warnings against users performing somersaults (flips) and/or jumping with multiple people to appear on the trampoline itself, however, defendant did

Page 12 - OPINION AND ORDER

affix those warnings to the trampoline as well as on a large warning placard attached to the trampoline at the point of entry or mounting. Specifically, one warning attached to the trampoline frame leg stated:

> **! WARNING**
>
> **Do not land on head or neck.**
> **Paralysis or death can result, even if you land**
> **in the middle of the trampoline mat (bed).**
> **To reduce the chance of landing on your head**
> **or neck, do not do flips.**

Defendant's Ex. 9. Accompanying these warning labels is a "stick-figure" drawing of an individual landing on his head. The drawing is located above the warning language and is enclosed in a circular "x-ed" or "crossed-out" notation, commonly understood to mean that the conduct described should be avoided.

Another pair of warning labels affixed to the trampoline legs read:

> **! WARNING**
>
> **Only one person at a time on the trampoline.**
> **Multiple jumpers increase the chances of loss**
> **of control, collision, and falling off.**
> **This can result in broken head, neck,**
> **back or leg.**

Defendant's Ex. 10. Accompanying these warnings and placed above the warning language is a drawing of two individuals jumping on a single trampoline, which is also enclosed in a "crossed out" or "x-ed" notation. These same warning labels warning users against

Page 13 - OPINION AND ORDER

performing flips or somersaults and against jumping with multiple people were also on the trampoline frame pad, the large 8" x 11" warning placard framed by the colors orange and yellow and attached to the trampoline frame at the point of entry, and in various places throughout the User's Manual. Defendant's Exs. 5-11. The court notes that these warnings went beyond what was required by the ASTM safety standards. Defendant's Ex. 4, p. 44-45.

Further, Jack Urbach testified that the warning placard, which specifically warns against both multiple jumping and performing flips or somersaults and the risk of paralysis, was included in the trampoline he purchased, and that he attached the placard to the trampoline upon its initial assembly. Defendant's Ex. 3, p. 41-42. Urbach further testified that he had his entire family watch the safety video provided by defendant prior to assembling and using the trampoline. Id. at p. 42-43.

Considering Oregon's objective approach to the consumer expectations test and its adoption of § 402A comment j, defendant is entitled to assume that its many warnings will be read, watched and heeded. The fact that plaintiff may not have seen the many warnings defendant provided prior to his accident does not create a material issue of fact as to whether the warnings rendered the trampoline defective and unreasonably dangerous. Defendant's summary judgment motion is granted as to plaintiff's

claim that the trampoline's warnings were inadequate. I find that defendant's warnings were adequate as a matter of law.

   III. Defendant's Duty to Warn of Risks

   "A manufacturer's duty to make a product that is not 'unreasonably dangerous' in not obviated even if the dangerous aspect of the product is 'open or obvious' or 'generally known and recognized.'" Gunstone v. Julius Blum GmbH, 111 Or. App. 332, 336, 825 P.2d 1389, rev. denied, 313 Or. 354, 833 P.2d 1283 (1992). However, when a product is only unreasonably dangerous due to a lack of warning, a manufacturer will not be liable if the danger is "generally known and recognized." Id. at 336-37. I find that any risk or danger from jumping on a trampoline is a danger that is "generally known and recognized." § 402A, comment j. See Anderson, 79 Wash. App. at 835 ("the risks associated with this activity are fairly obvious, and [16-year-old plaintiff] was old enough to appreciate them.").

   IV. "Substantial Cause" of Plaintiff's Injuries

   Plaintiff must show that the trampoline design or its alleged inadequate warnings caused his injuries. "In addition to presenting proof as to the condition of the defendant's product, the plaintiff in a strict liability case is required to establish that such condition proximately caused his injuries or damages." Gilmour v. Norris Paint & Varnish Co., Inc., 52 Or. App. 179, 184, 627 P.2d 1288 (1981)(internal quotation omitted). Oregon

courts have held that an inadequate warning "must be a substantial cause of the person's injuries." Benjamin, 185 Or. App. at 458.

Plaintiff fails to present any evidence to demonstrate a material issue of fact that the lack of different or additional warnings on the trampoline caused his injuries. There is no dispute that plaintiff had jumped on at least five different trampolines over the course of six or seven years prior to his accident. Defendant's Ex. 1, p. 16-26 (plaintiff's deposition testimony). Plaintiff states that he never saw any warning on any trampoline, including the trampoline at issue. Id. at p. 35-38.

Defendant presented evidence that it provided ten warnings on its trampoline. Defendant's Exs. 6-11. Most of these warnings cautioned potential jumpers of the dangers associated with performing flips, and specifically mention the risk of paralysis that is involved with landing on one's head or neck. Defendant's Exs. 6, 9, 11. Defendant provided other warnings to inform potential users that they can reduce the chance of landing on their head and neck by not performing somersaults or flips. Defendant's Exs. 5,6, 9, 11. Plaintiff has failed to produce any evidence to support his allegation that his injuries were caused by the lack of additional warnings. Plaintiff seemingly ignore ten warnings posted by the defendant on the trampoline, most of

which cautioned users against the precise activity in which plaintiff engaged and warning against the possibility of the precise type of injury that resulted. The record contains no evidence that the absence of yet another warning advising users against performing flips and jumping with multiple people on a trampoline was the "substantial cause" of his injury.

Defendant's summary judgment motion is granted as to plaintiff's claim that the alleged design defect or lack of adequate warnings was the "substantial cause" of his injuries. Conclusory allegations are insufficient to defeat a motion for summary judgment. <u>McGinest v. GTE Service Co.</u>, 360 F.3d 1103, 1115 (9th Cir. 2004).

## CONCLUSION

Defendant/third-party plaintiff Jumpking's unopposed motion for summary judgment (doc. 27) is granted. This case is dismissed, and all pending motions are denied as moot. Defendant's request for oral argument is denied as unnecessary. Further, the pretrial conference and 5-day jury trial set in this case on May 9, 2006, and May 22, 2006, respectively, are stricken.

IT IS SO ORDERED.

Dated this __26__ day of January 2006.

                                     /s/ Ann Aiken
                                         Ann Aiken
                             United States District Judge